OLANDER, Appellant,

v.

OHIO ENVIRONMENTAL PROTECTION AGENCY, Appellee.

[Cite as *Olander v. Ohio Environmental Protection Agency* (1999), 134 Ohio App.3d 723.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 98AP–891.

Decided April 22, 1999.

724

*E. Dennis Muchnicki,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Frank J. Reed,* Assistant Attorney General, for appellee.

---

KENNEDY, Judge.

Appellant, Thomas J. Olander, served as Human Resource Administrator 3 ("HRA3") with the Ohio Environmental Protection Agency ("Ohio EPA"). Appellant took the position, which acts as Division Chief of the Human Resources Office for the Ohio EPA, effective October 29, 1991. The actual recognition of appellant's position as HRA3 occurred through a settlement agreement executed in February 1994. In October 1995, appellant's employment was terminated.

Appellant appealed his termination to the State Personnel Board of Review ("SPBR"). The SPBR concluded that appellant was a fiduciary and, thus, an unclassified employee. As such, the SPBR dismissed appellant's appeal on grounds that it lacked subject-matter jurisdiction to hear the merits of the appeal. The Franklin County Court of Common Pleas upheld the SPBR's decision.

Appellant appeals, raising the following assignments of error:

## ASSIGNMENT OF ERROR NUMBER ONE

"The decisions of the SPBR and court of common pleas below erroneously held that appellant was a fiduciary despite the uncontroverted evidence that the EPA director did not trust Mr. Olander to perform, and did not allow him to perform, the key discretionary functions of his position description."

## ASSIGNMENT OF ERROR NUMBER TWO

"The decisions below fail to analyze Olander's assigned duties in order to determine whether they involved the exercise of discretionary authority which required a high degree of trust, confidence, integrity and fidelity over and above technical competence."

Because the two assignments of error concern similar issues, we will discuss them together.

In his two assignments of error, appellant challenges the trial court's conclusion that he was a fiduciary and an unclassified employee. Generally, an unclassified public employee can be terminated from his or her position for any reason. *Eudela v. Ohio Dept. of Mental Health & Mental Retardation* (1986), 30 Ohio App.3d 113, 114, 30 OBR 213, 213–214, 506 N.E.2d 947, 948–949. As such, the SPBR has jurisdiction to hear appeals relating to job termination filed by classified public employees and not unclassified public employees. R.C. 124.03.

An employee who holds a fiduciary relationship with his or her employer is an unclassified employee. R.C. 124.11(A)(9).

A fiduciary relationship is more than the ordinary relationship of employer and employee. *In re Termination of Emp.* (1974), 40 Ohio St.2d 107, 114, 69 O.O.2d 512, 516, 321 N.E.2d 603, 608. Rather, a fiduciary relationship exists where special confidence " 'is reposed in integrity and fidelity of another.' " *State ex rel. Charlton v. Corrigan* (1988), 36 Ohio St.3d 68, 71, 521 N.E.2d 804, 806–807, quoting *In re Termination of Emp.*, 40 Ohio St.2d at 115, 69 O.O.2d at 517, 321 N.E.2d at 609. The test is whether the job duties "require, as essential qualifications over and above technical competency requirements, a high degree of trust, confidence, reliance, integrity and fidelity." *Id.* Duties actually delegated to and performed by an employee establish whether an individual is a fiduciary. *In re Termination of Emp.*, at 113, 69 O.O.2d at 516, 321 N.E.2d at 607–608. A fiduciary relationship does not exist where no discretion is involved in the job duties and where tasks are clearly routine. *Yarosh v. Becane* (1980), 63 Ohio St.2d 5, 11, 17 O.O.3d 3, 7, 406 N.E.2d 1355, 1360.

Appellant argues that the trial court erred in concluding that he was a fiduciary and, thus, an unclassified employee because Ohio EPA Director Schregardus, as part of the settlement agreement, removed key discretionary functions of equal employment opportunity matters, labor relations, and employee training and safety from his authority and by failing to analyze whether his remaining

assigned duties as HRA3 involved an exercise of discretion that required a high degree of trust, confidence, integrity, and fidelity. We disagree.

█ The standard of review for the trial court in considering an administrative agency's order is whether the order is supported by reliable, probative and substantial evidence and is in accordance with the law. *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 110, 17 O.O.3d 65, 66–67, 407 N.E.2d 1265.

█ In reviewing the decision of the trial court as to whether an agency's order is supported by reliable, probative, and substantial evidence, an appellate court's role is limited to determining whether or not the trial court abused its discretion. *Hartzog v. Ohio State Univ.* (1985), 27 Ohio App.3d 214, 216, 27 OBR 254, 255–256, 500 N.E.2d 362, 364–365. Abuse of discretion implies a decision that is both without a reasonable basis and clearly wrong. *Id.* On questions of law, the appellate court's review is plenary. *Ohio Historical Soc. v. State Emp. Relations Bd.* (1993), 66 Ohio St.3d 466, 470, 613 N.E.2d 591, 595; *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 587 N.E.2d 835, paragraph one of the syllabus.

In this case, contrary to appellant's assertion, the decisions of the trial court and the SPBR provide extensive and careful analysis on whether his actual duties required a high degree of trust, confidence, integrity, and fidelity. We agree with the trial court and the SPBR that the evidence establishes that appellant was a fiduciary and, thus, an unclassified employee based on the fact that his assigned job duties required him to exercise discretion in a manner requiring a high degree of trust, confidence, integrity, and fidelity.

For example, appellant participated in the hiring of over two hundred people during the one-year period prior to his termination. Appellant's role in the hiring process was not routine and did not entail mere paperwork processing. Rather, appellant would create positions with the Department of Administrative Services, post vacant positions, and screen applicants. Moreover, appellant exclusively hired intermittent employees throughout his tenure as HRA3.

Additionally, appellant played an integral role in establishing and implementing policies and procedures for the Ohio EPA. For example, appellant wrote human resource policies and procedures for the agency. Moreover, throughout his tenure as HRA3, appellant was responsible for reviewing and updating the policies and procedures. Appellant's fiduciary status is unaffected by the fact that additional management had a role in creating and adopting the policies and procedures. Rather, appellant's fiduciary status is premised on the Ohio EPA's reliance upon appellant's expertise in human resource matters to assist in the establishment and implementation of the agency's policies and procedures.

Similarly, throughout his tenure as HRA3, appellant provided advice on employment issues, policies, and procedures to the Ohio EPA director, executive staff, and management.

Moreover, appellant handled Ohio EPA's disciplinary matters until he was terminated. For example, appellant conducted employment termination hearings on behalf of the agency. Appellant conducted pre-disciplinary hearings on behalf of the agency and recommended appropriate discipline after the hearings. Furthermore, appellant was in charge of carrying out discipline relating to sick leave violations. As well, up until the time he was terminated, appellant supervised a staff that assisted him in human resource matters and was responsible for ensuring that the Ohio EPA's field staff properly reported and carried out its duties.

Appellant also handled very sensitive matters for Schregardus. For example, in November 1994, appellant drafted Schregardus's response provided to former Governor Voinovich regarding concerns that a former employee had communicated to the Governor. Moreover, appellant's duties as HRA3 required him to serve as the Ohio EPA liaison to the Department of Administrative Services.

Accordingly, we conclude that appellant's role in the hiring, disciplining, and policy-making process for the Ohio EPA, as well as his duties of supervising employees and acting as a liaison for the agency, supports a holding that appellant is a fiduciary and, thus, an unclassified employee. See *Robinson v. Ohio Dept. of Insurance* (May 25, 1995), Franklin App. No. 94APE07–1090, unreported, 1995 WL 318765 (concluding that a human resource administrator was a fiduciary, unclassified employee where the administrator made recommendations on positions and salaries, new hires, discipline, and department policies); see, also, *Beery v. Ohio Bd. of Chiropractic Examiners* (1990), 66 Ohio App.3d 206, 583 N.E.2d 1083 (holding that an executive secretary/administrator who was involved in hiring and firing employees, managing the office staff, and representing the agency before the legislature was a fiduciary, unclassified employee).

Additionally, appellant's fiduciary status is bolstered by his generally unimpeded access to Schregardus. Throughout his term as HRA3, appellant, along with other section chiefs in the Ohio EPA, attended regularly scheduled meetings conducted by Schregardus. Furthermore, appellant attended scheduled and impromptu private meetings with Schregardus to discuss human resource matters.

 Appellant's fiduciary status is unaffected by the fact that Schregardus revoked appellant's signature authority after appellant authorized the reassign-

ment of Michele Washington in contravention of the director's expressed preferences. At most, the revocation of the signature authority reveals Schregardus's dissatisfaction with appellant after he acted in contravention of the director's expressed preferences in the Washington incident. When dissatisfaction exists in the fiduciary employee and fiduciary aspects of the relationship diminish, the unclassified position does not automatically become classified. *Wells v. Monroe Cty. Bd. of Commrs.* (June 27, 1995), Scioto App. No. 94 CA 2273, unreported, 1995 WL 404994. Furthermore, an employee can be a fiduciary and unclassified employee even if the individual does not possess signature authority for the principal. *Robinson*; *Hammel v. Ohio Dept. of Development* (Oct. 31, 1995), Franklin App. No. 95APE02–157, unreported, 1995 WL 645258. Additionally, as noted above, appellant's other actual duties support a finding that he was a fiduciary.

Similarly, appellant's fiduciary status is unaffected by appellant's lack of authority to make final decisions in certain cases involving hiring, disciplining, and policy making. See *Robinson* (concluding that an employee was a fiduciary despite the fact that she did not always have authority to make final decisions in human resource matters). As noted above, appellant played an integral part in hiring, disciplining, and policy making.

Therefore, we conclude that the trial court did not err when it upheld the SPBR's order that appellant was a fiduciary and, thus, an unclassified employee. Accordingly, we overrule appellant's assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

Peggy Bryant and Petree, JJ., concur.