Christine BRACKEN, Plaintiff–
Appellant,

v.

Joseph A. COLLICA and City of
Streetsboro, Defendants–
Appellees.

No. 02–3794.

United States Court of Appeals,
Sixth Circuit.

March 24, 2004.

Before SILER, DAUGHTREY, and GIBBONS, Circuit Judges.

GIBBONS, Circuit Judge.

Plaintiff-appellant Christine Bracken seeks review of a district court decision dismissing her complaint against defendants-appellees Mayor Joseph A. Collica and the City of Streetsboro, Ohio. On March 21, 2002, Bracken filed a complaint against defendants-appellees pursuant to 42 U.S.C. § 1983 alleging that she had been wrongfully terminated from her job as assistant to the law director of the City of Streetsboro and deprived of her procedural due process, substantive due process, and First Amendment freedom of association rights. The district court dismissed Bracken's claims under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted. For the following reasons, we affirm.

I.

On July 21, 1999, during the administration of former mayor Sally Henzel, Bracken was hired as part-time administrative assistant to James Martin, who at the time was law director of the City of Streetsboro. She was recommended for the posi-

tion by Martin. On September 24, 2001, after Mayor Collica took office, the city council passed Ordinance No.2001–190, which created the position of full time assistant to the law director. Pertinent to this matter, the ordinance provides as follows:

> WHEREAS, the City has determined the volume of .its work requires the establishment of a full time assistant to the law director, a confidential and unclassified position; and
>
> WHEREAS, it is necessary to establish the compensation therefore;
>
> . . .
>
> SECTION 1: The position of full time Assistant to the Law Director, a confidential and unclassified position, is hereby created....

With Mayor Collica's approval, Martin appointed Bracken to this newly created position on October 8, 2001. Her appointment was effective on October 29, 2001.

On December 3, 2001, Mayor Collica terminated Martin's employment. Mayor Collica's decision was not final, however, because under the Streetsboro Charter approval by the council is required whenever the Mayor wishes to terminate a member of the city's law department. The charter provides:

> SECTION 9.04 REMOVAL OF LAW DIRECTOR The Law Director or any member of the Department of Law may be removed by the Mayor if a majority of Council approves such removal by vote at a regularly scheduled meeting of Council. He may be removed from office by Council by a three-fourths (3/4) affirmative vote of the members of the Council.

On December 17, the council passed Ordinance No.2001–249 approving Martin's removal. On January 7, 2002, the council reconsidered Martin's removal and re-

pealed the ordinance which approved the termination of Martin's employment. Martin returned to work the next day, but Mayor Collica ordered the Police Chief to remove him from the building. Later on January 8, Bracken was terminated "effective immediately" by Mayor Collica.

On January 14, 2002, Mayor Collica notified the payroll clerk in the City Finance Department that he had appointed Ms. Nancy Cline "to the full time position of Law Department Clerk effective January 9, 2002." At a special meeting held on January 17, 2002, the council rejected Bracken's termination by Mayor Collica by a vote of 7–0. Still, Mayor Collica has refused to allow her to return to work, has denied her compensation, and has had her removed from the building on the occasions when she has attempted to return to work.

## II.

We review a district court's decision to dismiss a claim pursuant to Fed.R.Civ.P. 12(b)(6) *de novo. Sistrunk v. City of Strongsville,* 99 F.3d 194, 197 (6th Cir. 1996). We uphold such a dismissal only if, after construing "the complaint liberally in the plaintiff's favor and accept[ing] as true all factual allegations and permissible inferences therein[,] ... it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.* (quotations omitted).

## III.

*A. Procedural Due Process Claim*

█ We find that Bracken did not have a protected property interest in continued employment. Therefore, her procedural due process claim must fail.

The Fourteenth Amendment prohibits governmental actions which would deprive "any person of life, liberty, or property,

without due process of law." U.S. CONST. Amend. XIV, § 1. In considering when a person has a property right in a benefit such as governmental employment, the Supreme Court has stated, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). As this court has recognized, "a public employee does not have a property interest in continued employment when his position is held at the will and pleasure of his superiors and when he has not been promised that he will only be terminated for good cause." *Chilingirian v. Boris,* 882 F.2d 200, 203 (6th Cir.1989) (holding that city attorney who served "at the pleasure of the [City] Council" had no property right in continued employment).

The city ordinance creating the full time position of administrative assistant to the law director characterized the position as "confidential and unclassified." The term "unclassified," when used in the civil service context, is a term of art which indicates that an employee occupying a position is terminable at will. *See State ex rel. Hunter v. Summit County Human Res. Comm'n,* 81 Ohio St.3d 450, 692 N.E.2d 185, 188 (Ohio 1998); *Lee v. Cuyahoga County Ct. of Common Pleas,* 76 Ohio App.3d 620, 602 N.E.2d 761, 763 (Ohio Ct.App.1991). Under Ohio Adm.Code § 5119–7–11(C)(10), an unclassified employee is appointed at the discretion of the appointing authority and serves at the pleasure of such authority. Under the terms of the ordinance creating her position, Bracken is clearly an unclassified employee and therefore terminable at will.

Despite her "at will" status, Bracken points to the City of Streetsboro charter as

the source of her legitimate claim of entitlement to continued employment. Section 9.04 of the charter provides, in relevant part, that "[t]he Law Director or any member of the Department of Law may be removed by the Mayor if a majority of Council approves such removal by vote at a regularly scheduled meeting of Council." It is undisputed that council approval did not take place, but the parties dispute whether Bracken is a member of the law department, whose termination required council approval.

We need not resolve the issue of whether Bracken's termination required council approval.[1] Even if Bracken is correct that she is a member of the law department, she does not have a legitimate claim of entitlement to continued employment. She is still susceptible to termination at any time for any reason. Section 9.04 of the charter sets forth only *who* can terminate her, not *why* she can be terminated.

Bracken argues that, even if by the terms of the ordinance she is terminable at will, section 9.04 of the charter applies and gives her increased protection. Bracken is correct that if there is a conflict between section 9.04 and Ordinance 2001–190, the charter trumps the ordinance. *See State ex rel. Devine v. Hoermle,* 168 Ohio St. 461, 156 N.E.2d 131, 133 (1959). However, in this case there is no conflict under Ohio law or otherwise. As the Ohio Supreme Court has stated, "[t]he rule of charter supremacy applies only where the conflict appears by the express terms of the charter and not by mere inference." *State ex rel. Bardo v. City of Lyndhurst,* 37 Ohio St.3d 106, 524 N.E.2d 447, 450 (1988). The charter simply states that members of the law department may not be dismissed by unilateral act of the mayor. The charter does not address whether Bracken is ter-

minable at will, and the ordinance does not address who has the authority to terminate her. Clearly, there is no conflict by the express terms of the charter.

Because Bracken was an unclassified employee, terminable at will under Ohio law, she had no legitimate claim of entitlement to continued employment. Thus, she had no property interest in her job and was not entitled to due process before being discharged.

## B. Substantive Due Process Claim

■ Bracken's asserted right to approval of her discharge by the council does not rise to the level of a fundamental right that is afforded substantive due process protections. As this court stated in *Charles v. Baesler,* 910 F.2d 1349 (6th Cir.1990), a case on which both the district court and appellees rely heavily,

> Most, if not all, state-created contract rights, while assuredly protected by procedural due process, are not protected by substantive due process. The substantive Due Process Clause is not concerned with the garden variety issues of common law contract. Its concerns are far narrower, but at the same time, far more important. Substantive due process "affords only those protections 'so rooted in the traditions and conscience of our people as to be ranked as fundamental....'" It protects those interests, some yet to be enumerated, "implicit in the concept of ordered liberty ..." like personal choice in matters of marriage and family.
>
> State-created rights such as [the appellant's] contractual right to promotion do not rise to the level of "fundamental" interests protected by substantive due process. Routine state-created contrac-

---

1. The only claim that requires resolution of this issue is Bracken's state law wrongful termination claim, which the district court dismissed without prejudice.

tual rights are not "deeply rooted in this Nation's history and tradition," and, although important, are not so vital that "neither liberty nor justice would exist if [they] were sacrificed."

*Id.* at 1353 (citations omitted).

Bracken contends that she held her job as a matter of statute, not of contract, and that *Baesler* therefore is not controlling. While it is true that the position of assistant to the law director was created by a city ordinance and not a contract, Bracken was not specifically named in the ordinance as the assistant. Thus, she did not hold her job pursuant to the ordinance. In any event, Bracken's at-will employment hardly seems the sort of fundamental interest protected by substantive due process. Thus, Bracken's argument that *Baesler* is inapplicable is unpersuasive.

Further, this court has specifically held that an employee's right to be discharged only for cause does not enjoy substantive due process protections. As this court stated in *Sutton v. Cleveland Board of Education,* 958 F.2d 1339 (6th Cir.1992),

[a]lthough *Baesler* did not conclude that all state-created contract rights lack substantive due process protection, and specifically left unanswered the question whether substantive due process may protect a contract right to keep a tenured job ... we are persuaded by the reasoning of *Baesler* that plaintiffs' statutory right to be discharged only for cause is not a fundamental interest protected by substantive due process.

*Id.* at 1351 (citations omitted). Bracken enjoyed much less protection from termination than did the plaintiff in Sutton. Sutton was an Ohio school bus driver. *Id.* at 1341. As such, he was a "classified" employee and could be discharged only for cause. Ohio Rev.Code §§ 124.11 and 123.34. Bracken, by contrast, could be discharged at will under the ordinance cre-ating her position. For this reason, if the discharge of Sutton, whose position was much more secure than Bracken's, did not rise to the level of a substantive due process violation, then certainly Bracken's discharge does not either.

We have recognized that a "substantive due process right may be implicated when a public employee is discharged for reasons that shock the conscience." *Perry v. McGinnis,* 209 F.3d 597, 609 (6th Cir. 2000). Bracken contends that her discharge in violation of the ordinance's requirement of council approval should shock the conscience. However, the violation of a fundamental right is still necessary for a successful substantive due process claim. *Id.* Because Bracken has failed to allege a violation of a fundamental right, we need not consider whether her discharge shocks the conscience.

## C. First Amendment Claim

Bracken claims that she was fired because of her association with Martin. The Supreme Court has long recognized that "the freedom to enter into and carry on certain intimate or private relationships is a fundamental element of liberty protected by the Bill of Rights." *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte,* 481 U.S. 537, 545, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987). The Court recognizes and protects two types of intimate relationships. First, the Court recognizes "a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Marcum v. McWhorter,* 308 F.3d 635, 639 (6th Cir.2002) (citing *Roberts v. United States Jaycees,* 468 U.S. 609, 618, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984)). Second, the Court recognizes a right of intimate association in certain contexts, reasoning that "choices to enter into and maintain certain intimate human relationships must be secured against undue

intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." *Id.* (citing *Roberts*, 468 U.S. at 617–18).

█ We find that, even if Bracken was fired due to her association with Martin, Mayor Collica's conduct did not violate Bracken's First Amendment right to freedom of association. Bracken has not alleged that her relationship with Martin was for the purpose of engaging in expressive activity.[2] Therefore, she must rely on the assertion that her relationship with Martin was one of the intimate associations which must be protected from state intrusion as a fundamental element of personal liberty. *See Marcum*, 308 F.3d at 639. Clearly, as Martin's full time assistant, Bracken was in a close relationship with Martin. Also, it was Martin who originally nominated her for the job.[3] However, this relationship, although close, is not the sort of intimate association protected by the First Amendment.

This court has stated that the relationships that warrant protection "are those that attend the creation and sustenance of a family, which are distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." *Marcum v. McWhorter*, 308 F.3d 635, 639 (6th Cir.2002) (citation omitted). While protected relationships are not limited to those among family members, protection is afforded only to "those relationships that 'presuppose deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.' " *Id.* at 639–40 (quoting *Rotary*, 481 U.S. at 545).

In light of this demanding standard, we find that Bracken has not alleged that she and Martin had the kind of highly intimate relationship which the First Amendment protects.

## IV.

For these reasons, the ruling of the district court dismissing with prejudice Bracken's federal claims is affirmed, as is its ruling dismissing the state claim without prejudice.

---

**2.** The district court believed that Bracken failed to allege in her complaint that she was fired due to her association with Martin. We find that she did make such an allegation. The district court further reasoned that any such allegation Bracken could be found to raise should be analyzed as a patronage dismissal. In a patronage dismissal, an employee is discharged due to her affiliation with a political party disfavored by those in control. *See, e.g., Branti v. Finkel*, 445 U.S. 507, 513, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) (Democratic county legislature not allowed to fire assistant public defenders due to affiliation with Republican party). Generally, patronage dismissals violate the First Amendment except where "the hiring authority can demonstrate that party affiliation is an appropri-

ate requirement for the effective performance of the public office involved," *id.* at 518, unless the government can show "that the person subject to dismissal occupied a position that would permit obstruction of policy implementation." *Faughender v. City of N. Olmstead*, 927 F.2d 909, 915 (6th Cir.1991). We, however, find that Bracken's discharge cannot be properly characterized as a patronage dismissal, since there is no indication she was fired for any political belief she may have held. She claims that she was fired based on her association with Martin, not due to some shared political affiliation.

**3.** Interestingly, Martin now acts as Bracken's attorney in this litigation.