[Cite as *Warthman v. Genoa Twp. Bd. of Trustees*, 2011-Ohio-1775.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LESLIE WARTHMAN | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellant | Hon. Julie A. Edwards, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 10CAH040034 |
| GENOA TOWNSHIP BOARD OF<br>TRUSTEES | |
| | O P I N I O N |
| Defendant-Appellee | |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Delaware County Court of<br>Common Pleas, Case No. 07CVH080902 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | April 12, 2011 |

APPEARANCES:

For Plaintiff-Appellant

RICHARD D. BROWN
Richard D. Brown Law Office, LLC
3 South High Street
Canal Winchester, Ohio 43110

For Defendant-Appellee

CHERI B. HASS
DAVID A. RIEPENHOFF
Downes Fishel Hass Kim LLP
400 S. Fifth Street, Suite 200
Columbus, Ohio 43215

DAVE YOST
Prosecuting Attorney
Delaware County
140 N. Sandusky St.
P.O. Box 8006
Delaware, Ohio 43015

*Hoffman, P.J.*

**{¶1}** Plaintiff-appellant Leslie Warthman appeals the April 1, 2010 Judgment Entry of the Delaware County Court of Common Pleas granting judgment in favor of Defendant-appellee Genoa Township Board of Trustees.

STATEMENT OF THE FACTS AND CASE

**{¶2}** This matter involves an allegation Appellee Genoa Township Board of Trustees ("the Board") failed to comply with Ohio's Open Meetings Act, as set forth in O.R.C. 121.22.

**{¶3}** From July 2000 until April 4, 2007, the Board employed Appellant as Township Zoning Inspector.

**{¶4}** On March 12, 2007, the Genoa Township Zoning Commission conducted a meeting concerning a parcel of property upon which a developer proposed to build condominiums. As Genoa Township Zoning Inspector, Appellant was responsible for enforcing township zoning codes, notifying residents potentially affected by zoning decisions, preparing reviews or critiques of applications for zoning changes, and informing members of the Board of zoning matters. A dispute arose as to the propriety of the condominium rezoning request at the March 12, 2007 Zoning Commission meeting.

**{¶5}** Following the meeting, Appellant sent an email from her Township email account to Township residents Jack and Cheryl Jenkins. The email expressed Appellant's frustration with the interference of the Zoning Commission members and Zoning Commission Chairperson Scott Downing, in particular. The email used words unflattering to and critical of Downing. The next morning Appellant sent the email to her

superiors, three members of the Genoa Township Board of Trustees: John Reilly, Gerry Cotter, and Helen Barber; as well as Genoa Township Administrator, Paul Wise.

**{¶6}** Downing obtained a copy of the email by public records request, and contacted his personal attorney for advice. In a phone call to Paul Wise, Downing threatened to sue the Township with regard to the email.

**{¶7}** On March 14, 2007, the Board conducted a meeting, during which the following exchange occurred on the record:

**{¶8}** "Mr. Downing: Yes. My name is Scott Downing, 5014 St. Andrews Drive, Genoa Township. I'm also the chairman of our zoning commission in Genoa Township and have been a volunteer of the township for 13 years in that position.

**{¶9}** "I'm here to ask the trustees for an executive session with the board of zoning commission. We have some matters that we feel we need to discuss with you that would be best done in executive session. And my board is present at this time.

**{¶10}** "Chairperson Cotter: Do we want to entertain an executive session?

**{¶11}** "Trustee Rielly: Yes.

**{¶12}** "Chairperson Cotter: Okay. I'll motion to consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee or official where the investigation of charges or complaints against the public employee, official, licensee, or regulated individual unless the public employee, official, licensee or regulated individual requests a public hearing. Is there any second to that?

**{¶13}** "Trustee Barber: I'll second.

**{¶14}** "Chairperson Cotter: Okay. Mr. Kemp - -

**{¶15}** "Ms. Warthman: Can you reread that motion, please? Is there a motion I can make for a public hearing? Is that what you just said?

**{¶16}** "Chairperson Cotter: Yeah.

**{¶17}** "Ms. Warthman: Because I believe that matter involves myself.

**{¶18}** "Chairperson Cotter: Yes, unless - -

**{¶19}** "Ms. Warthman: So I would like to request that public hearing.

**{¶20}** "Mr. Downing: I think she can have that public hearing but we are allowed to have an executive session but she can have that public hearing at a later date.

**{¶21}** "Trustee Rielly: Correct.

**{¶22}** "Paul: Ms. Cotter.

**{¶23}** "Trustee Rielly: Did you second that?

**{¶24}** "Trustee Barber: Yeah.

**{¶25}** "Chairperson Cotter: Yes.

**{¶26}** "Paul: Ms. Barber.

**{¶27}** "Trustee Barber: Aye.

**{¶28}** "Paul: Mr. Rielly.

**{¶29}** "Trustee Rielly: Aye.

**{¶30}** "Mr. Downing: Thank you.

**{¶31}** "Chairperson Cotter: Okay. We are going into executive session at 8:12 p.m.

**{¶32}** "(Executive session was held.)

**{¶33}** "Chairperson Cotter: Okay. I would like to make a motion to return to regular session at 8:37 p.m. and noting for the record that we didn't actually enter

executive session.  We consulted our Revised Code and figured out that we weren't going to executive session for a valid reason, so we are going to go ahead with the public comment.  Well, can I have a second for that motion?

**{¶34}** "Trustee Barber: I'll second your motion.

**{¶35}** "Chairperson Cotter: Okay.  Any discussion?

**{¶36}** "Trustee Rielly: Well, I disagree with the conclusion that was drawn from your interpretation of the code.

**{¶37}** "Chariperson Cotter: Okay.

**{¶38}** "Ms. McIntosh: Can you - - would you please explain to the audience how you arrived at that conclusion, please.

**{¶39}** "Chairperson Cotter: Well, we have a second on the - - on the floor so. Okay.  All in favor.

**{¶40}** "Trustee Barber: Aye.

**{¶41}** "Chairperson Cotter: Aye.  Motion carries.  We are back in regular session.

**{¶42}** "We actually consulted legal counsel to determine whether upon the request of an employee for a public hearing whether we could go into executive session, and we were told no so that's why we never entered executive session."

**{¶43}** Tr. at 3-6.

**{¶44}** The Board then allowed various members of the Zoning Commission to make public statements regarding Appellant, which Appellant claims are false, stigmatizing, attendant to her discharge and damaging to her good name and reputation.  Appellant maintains the Board did not give her a meaningful opportunity to

respond.    However, at the March 14, 2007 meeting, Appellant made the following statement on the record,

**{¶45}** "Ms. Warthman: I asked to speak next, and I think that it's fair that I do.  I would like to represent specifically who that e-mail went to were the two residents who were at the hearing misrepresented.  I prepared a 12-page document completely and thoroughly reviewing and doing the work that I have been doing since I have been at this township for the board.

**{¶46}** "I was basically slandered myself and told that I didn't do the work of the board in time for the applicant to respond in time.  And I took that in any which way, shape, or form as something that I needed to address.  It was not my job to get that board's review to them.  I got no information from the board members.

**{¶47}** "I don't believe any of those board members contacted me ever about applications, and when they use the material that I give them, that is the appropriate measures that they take.  From a staff perspective I was told in a meeting in front of a developer that the individual who is accusing me of slandering him, he- - he did not agree with my calculations.  My calculations are strictly technical review.  They are not opinionated like the board has presented.  The representation was gone from the meeting room when the board took a straw vote on a matter that I was incensed they were taking a vote on because I spent an entire week reviewing what was wrong on a technical basis, and we had the ability to take the application, put it aside, and tell a developer to come back with information that this township deserves which is justification for slamming the zoning code and that's what I was incensed about.

**{¶48}** "I did write to two individuals, and I e-mailed all of you as I did carbon copy you for a very intent purpose. It was not a back handed move. I was very incensed at the measures taken to use my report and not let me report on it that evening. I was gaveled and told it was too late to report what I had prepared all weekend.

**{¶49}** "The matters involve waiving code, waiving code over and over and over on the basis of personal opinions, and I have been trying extensively to tighten this code, to fix the code so that if we don't want to give away the township, that we make sure that the code is workable, that we don't have to keep giving it away. We have to work as a unified group.

**{¶50}** "What this becomes is slander to me and it is my power stripping that I have seen time and time again when I do the work and it's not appropriately applied. I presented my work to you all. I presented it to them. And I gave everyone the opportunity to say we don't want that. We chose to do something different. But not in front of a developer will I accept that behavior and when it happens to be on the premise of I can do it my way with no justification, I went to the public and I said I am very sorry. I can't protect you any more.

**{¶51}** "And that's what my e-mail was. It was my intent to get the public involved in a matter that I no longer can protect for them which is my code.

**{¶52}** "Chairperson Cotter: Is there anybody from the board that - -

**{¶53}** "Ms. Warthman: I will need a public hearing for all the accusations that have been present to me, and I will want this legally recorded for that purpose."

**{¶54}** Tr. at 14-17.

{¶55} The Board concluded the March 14, 2007 meeting adopting a motion to hold a special meeting to receive legal advice in executive session about Appellant's employment situation. On March 16, 2007, Appellee posted a Notice of Special Meeting for March 20, 2007 to discuss personnel matters in executive session.

{¶56} At the March 20, 2007 meeting, during the public portion of the session, Appellee approved a motion to hire an investigative firm to investigate the potential misconduct of Leslie Warthman.

{¶57} On April 3, 2007, the Board posted a Notice of Special Meeting for April 4, 2007.

{¶58} At the April 4, 2007 meeting, Appellant was called into Executive Session and asked to resign, but declined to do so. Following deliberation, the Board terminated Appellant's employment.

{¶59} As a result, Appellant filed the within action alleging Appellee violated Ohio's Open Meetings Act; therefore, her termination is unlawful and void.

{¶60} Via Judgment Entry of April 1, 2010, the trial court entered judgment in favor of Appellee Genoa Township Board of Trustees.

{¶61} Appellant now appeals, assigning as error:

{¶62} "I. THE TRIAL COURT ERRED IN DETERMINING THAT THE GENOA TOWNSHIP BOARD OF TRUSTEES DID NOT ENTER AN EXECUTIVE SESSION AT ITS MARCH 14, 2007 MEETING.

{¶63} "II. THE TRIAL COURT ERRED IN DETERMINING THAT, EVEN IF APPELLEE DID ENTER EXECUTIVE SESSION ON MARCH 14, 2007, IT WAS

PROPER TO DO SO UNDER R.C. 121.22(G)(1) BECAUSE APPELLANT WAS NOT ENTITLED TO REQUEST A PUBLIC HEARING.

{¶64} "III. THE TRIAL COURT'S LEGAL DETERMINATIONS THAT THE PUBLIC STATEMENTS MADE BY SPEAKERS ALLOWED TO SPEAK BY APPELLEE AT THE BOARD'S MARCH 14, 2007 MEETING WERE NOT FALSE, WERE NOT STIGMATIZING, WERE NOT ATTENDANT TO APPELLANT'S DISCHARGE, AND THAT APPELLANT HAD A MEANINGFUL OPPORTUNITY TO RESPOND TO CLEAR HER NAME, ARE IN ERROR.

{¶65} "IV. THE TRIAL COURT'S LEGAL DETERMINATION THAT APPELLEE ENTERED VALID EXECUTIVE SESSIONS AT ITS SPECIAL MEETINGS OF MARCH 20, 2007 AND APRIL 4, 2007 UNDER R.C. 121.22(G)(3) BECAUSE THE BOARD'S CONFERENCES WITH ITS ATTORNEY INVOLVED DISPUTES THAT WERE THE SUBJECT OF PENDING OR IMMINENT COURT ACTION IS ERRONEOUS AS NO LEGAL ACTION WAS PENDING OR IMMINENT.

{¶66} "V. THE TRIAL COURT ERRED IN DETERMINING THAT APPELLEE'S MOTION OF MARCH 14, 2007 TO ENTER EXECUTIVE SESSION AND THE MINUTES OF THE MARCH 14, 2007 TRUSTEES' MEETING WERE LEGALLY SUFFICIENT TO SATISFY THE REQUIREMENTS OF R.C. 121.22(G)(1).

{¶67} "VI. THE TRIAL COURT ERRED IN DETERMINING THAT THE NOTICES OF MARCH 16, 2007 AND APRIL 3, 2007 FOR THE BOARD'S SPECIAL MEETINGS OF MARCH 20, 2007 AND APRIL 4, 2007, RESPECTIVELY, WERE LEGALLY SUFFICIENT AND DID NOT VIOLATE THE OHIO MEETINGS ACT."

I & V.

{¶68} Appellant's first and fifth assignments of error raise common and interrelated issues; therefore, we will address the arguments together.

{¶69} Appellant argues the trial court erred in determining the Board did not enter into an executive session at its March 14, 2007 meeting. The trial court found as a matter of fact no executive session was held.

{¶70} The Board maintains its actions were authorized by the Ohio Open Meetings Act, O.R.C. 121.22. As set forth in the statement of the facts and case, supra, the Board adjourned to executive session at the March 14, 2007 meeting, and then returned having determined executive session was not appropriate. As a result, they reconvened public hearing.

{¶71} R.C. 121.22(G) reads:

{¶72} "(G) Except as provided in division (J) of this section, the members of a public body may hold an executive session only after a majority of a quorum of the public body determines, by a roll call vote, to hold an executive session and only at a regular or special meeting for the sole purpose of the consideration of any of the following matters:

{¶73} "(1) To consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee or official, or the investigation of charges or complaints against a public employee, official, licensee, or regulated individual, unless the public employee, official, licensee, or regulated individual requests a public hearing. Except as otherwise provided by law, no public body shall hold an executive session for the discipline of an elected official for conduct

related to the performance of the elected official's official duties or for the elected official's removal from office. If a public body holds an executive session pursuant to division (G)(1) of this section, the motion and vote to hold that executive session shall state which one or more of the approved purposes listed in division (G)(1) of this section are the purposes for which the executive session is to be held, but need not include the name of any person to be considered at the meeting.

{¶74} "(2) To consider the purchase of property for public purposes, or for the sale of property at competitive bidding, if premature disclosure of information would give an unfair competitive or bargaining advantage to a person whose personal, private interest is adverse to the general public interest. No member of a public body shall use division (G)(2) of this section as a subterfuge for providing covert information to prospective buyers or sellers. A purchase or sale of public property is void if the seller or buyer of the public property has received covert information from a member of a public body that has not been disclosed to the general public in sufficient time for other prospective buyers and sellers to prepare and submit offers.

{¶75} "If the minutes of the public body show that all meetings and deliberations of the public body have been conducted in compliance with this section, any instrument executed by the public body purporting to convey, lease, or otherwise dispose of any right, title, or interest in any public property shall be conclusively presumed to have been executed in compliance with this section insofar as title or other interest of any bona fide purchasers, lessees, or transferees of the property is concerned.

{¶76} "(3) Conferences with an attorney for the public body concerning disputes involving the public body that are the subject of pending or imminent court action;

{¶77} "(4) Preparing for, conducting, or reviewing negotiations or bargaining sessions with public employees concerning their compensation or other terms and conditions of their employment;

{¶78} "(5) Matters required to be kept confidential by federal law or regulations or state statutes;

{¶79} "(6) Details relative to the security arrangements and emergency response protocols for a public body or a public office, if disclosure of the matters discussed could reasonably be expected to jeopardize the security of the public body or public office;

{¶80} "(7) In the case of a county hospital operated pursuant to Chapter 339. of the Revised Code, a joint township hospital operated pursuant to Chapter 513. of the Revised Code, or a municipal hospital operated pursuant to Chapter 749. of the Revised Code, to consider trade secrets, as defined in section 1333.61 of the Revised Code.

{¶81} "If a public body holds an executive session to consider any of the matters listed in divisions (G)(2) to (7) of this section, the motion and vote to hold that executive session shall state which one or more of the approved matters listed in those divisions are to be considered at the executive session.

{¶82} "A public body specified in division (B)(1)(c) of this section shall not hold an executive session when meeting for the purposes specified in that division."

{¶83} The record demonstrates the Board adjourned to executive session, discussed whether it was necessary to confer with counsel regarding the issues concerning Appellant and her possible discipline, whether they were in executive

session for proper statutory reason and what step they should take with regard to Appellant's request for a public hearing.

**{¶84}** The minutes of the Board's March 14, 2007 meeting state,

**{¶85}** "Scott Downing (5014 St. Andrews Dr.)

**{¶86}** "Mr. Downing requested an executive session to discuss matters with the Zoning Commission Board in regards to a Township employee.

**{¶87}** "Motion 031407-11: Mrs. Cotter motioned to adjourn to executive session at 8:12 pm to discuss a matter involving a township employee and members of the Zoning Commission.  Mrs. Warthman stated that she would like to have a public hearing if applicable.  Mrs. Barber seconded.  Roll call: all ayes.  Motion carried.

**{¶88}** "Motion 031407-12: Mrs. Cotter motioned to return to regular session at 8:37 pm noting that executive session was not entered due to potential legal complications.  Mr. Rielly disagreed with regards to not entering executive session. Mrs. Barber seconded.  Roll call: all ayes.  Motion carried.

**{¶89}** "Mrs. Cotter stated that they were advised not to enter executive session on the grounds that the employee had requested a public hearing."

**{¶90}** Based upon the transcript of the March 14, 2007 Meeting, the Minutes cited above with regard thereto, and the record herein we find the trial court's determination the Board did not enter into executive session at the March 14, 2007 meeting to be supported by the sufficiency of the evidence.  The first and fifth assignments of error are overruled.

II. & III.

**{¶91}** Appellant's second and third assignments of error raise common and interrelated issues; therefore, we will address the arguments together.

**{¶92}** Appellant asserts the trial court erred in determining the Board acted properly in not conducting a public name clearing hearing at the March 14, 2007 meeting. Appellant argues because this is an Open Meetings Act violation, she is entitled to a name clearing hearing as a predicate to a public hearing under R.C. 121.22(G)(1). Appellant cites this Court's decision in *Merritt v. Canton Twp. Bd. of Trustees* (1998), 125 Ohio App.3d 533, holding:

**{¶93}** "We have already determined that appellant has no property interest in his employment as an unclassified employee. Absent a property interest, a name-clearing hearing is required only if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination so as to infringe his right to liberty. *State ex rel. Kilburn v. Guard* (1983), 5 Ohio St.3d 21, 23, 5 OBR 81, 83-84, 448 N.E.2d 1153, 1155-1156.

**{¶94}** "A liberty right is infringed when the following elements are established: "(1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) made public (5) by the governmental employer (6) without a meaningful opportunity for employee name clearing." (Footnotes omitted.) *Buxton v. Plant City* (C.A.11, 1989), 871 F.2d 1037, 1042-1043.

**{¶95}** "Appellant fails to meet the first requirement to establish the infringement of a liberty right because we find, as did the trial court, that Lehmiller's statement was not false. Appellant signed the zoning permit allowing Stark Community Dispatch to

establish business in an area zoned rural residential. Appellant did not even attempt to prove this statement false. Further, appellant produced no evidence that his employment opportunities were foreclosed. Appellant admitted that he did not try to find another job and also stated that the nonrenewal did not affect his ability to find another job because persons he has consulted with know him."

**{¶96}** A review of the record demonstrates that as of the March 14, 2007 meeting date Appellant had not been discharged or terminated. As of the date of the meeting, Appellant had not been disciplined or reprimanded in her position, despite the comments and statements made at the hearing. Therefore, Appellant has not established an infringement of a liberty right in order to be afforded a public name clearing hearing.

**{¶97}** Furthermore, we note Appellee did not create or disseminate the alleged false of defamatory impression. We find the fact Downing made his comments during the public speaks portion of the March 14, meeting, which is made available to the public, is not the functional equivalent of creating or disseminating.

**{¶98}** Accordingly, the second and third assignments of error are overruled.

IV.

**{¶99}** Appellant's fourth assignment of error maintains the trial court erred in determining the Board entered into valid executive sessions at the special meetings of March 20, 2007 and April 4, 2007 regarding pending or imminent court action.

**{¶100}** R.C. 122.22(G)(3) provides,

**{¶101}** "(G)(1) of this section, the motion and vote to hold that executive session shall state which one or more of the approved purposes listed in division (G)(1) of this

section are the purposes for which the executive session is to be held, but need not include the name of any person to be considered at the meeting.

**{¶102}** "***

**{¶103}** "(3) Conferences with an attorney for the public body concerning disputes involving the public body that are the subject of pending or imminent court action;"

**{¶104}** The March 20, 2007 Minutes state the Board adjourned to executive session to conference with an attorney regarding pending litigation. Mr. Downing had already contacted his attorney, and in a phone call to Paul Wise following the March 14, 2007 meeting threatened litigation against the Township and referenced consultation with legal counsel. Further, the record contains a number of letters to the Board indicating the potential for legal action, and Mr. Downing's demand for any apology to prevent legal action. Accordingly, we find the record supports the trial court determination the Board properly entered into executive session at the special meetings of March 20, 2007 and April 4, 2007. Further, the transcript of the meeting demonstrates there was an issue raised as to whether Appellant's email constituted slander, and the Zoning Commissioners asked the Board to retain legal counsel to inquire whether the same did in fact rise to the level of slander.

**{¶105}** Appellant's fourth assignment of error is overruled.

VI.

**{¶106}** Appellant's sixth assignment of error maintains the Board's notices of the March 16, 2007 and April 4, 2007 meetings were legally insufficient and violated the Ohio Open Meetings Act; therefore, her termination was invalid. The Notice of Special Session on March 20, 2007 states the "purpose of this meeting is to discuss personnel

matters in executive session, and any other business that may come before the Board."
The Notice of Special Meeting for April 4, 2007 states the "purpose of the meeting is to discuss personnel issues."

{¶107} Accordingly, the notices for the special meetings stated the purpose of each meeting was to discuss "personnel issues". Appellant argues the notices were insufficient as neither mentioned the specific type of personnel matter to be discussed or the consultation with legal counsel in executive session.

{¶108} R.C. Section 121.22 reads,

{¶109} "(F) Every public body, by rule, shall establish a reasonable method whereby any person may determine the time and place of all regularly scheduled meetings and the time, place, and purpose of all special meetings. A public body shall not hold a special meeting unless it gives at least twenty-four hours' advance notice to the news media that have requested notification, except in the event of an emergency requiring immediate official action. In the event of an emergency, the member or members calling the meeting shall notify the news media that have requested notification immediately of the time, place, and purpose of the meeting.***"

{¶110} Appellant asserts the notices were not legally sufficient to satisfy the requirements of R.C. 121.22(F), as they must set forth the purpose of the special meeting.

{¶111} In support, Appellant cites the Eleventh District Court of Appeals' decisions in *Weisbarth v. Geauga Park Dist.*, 2007-Ohio-6728 and *Jones v. Brookfield Township* (June 30, 1995), No. 92T4692.

**{¶112}** However, a review of the court's opinion in *Weisbarth* indicates the issue involved a violation of R.C. 121.22(G), and the Board's failure to fully specify in the minutes the basis for entering executive session; rather, than a violation of subsection (F) and the special notice requirement.

**{¶113}** In *Jones*, the Eleventh District held,

**{¶114}** "In relation to the general notice which must be given before a public body holds a regular or special meeting, R.C. 121.22(F) states, in pertinent part:

**{¶115}** "'Every public body shall, by rule, establish a reasonable method whereby any person may determine the time and place of all regularly scheduled meetings and the time, place, and purpose of all special meetings. A public body shall not hold a special meeting unless it gives at least twenty-four hours' advance notice to the news media that have requested notification, except in the event of an emergency requiring immediate official action.* * *'

**{¶116}** "In attempting to interpret the foregoing language, appellee contends that R.C. 121.22(F) does not require that the notice of a special meeting state the meeting's exact purpose. However, the wording of division (F) simply does not support appellants' argument. The first sentence of the division states that as compared to the notice of a regular meeting, the notice of the special meeting must be sufficient for a person to determine the purpose of the meeting. The second sentence merely states that this notice must be given to the news media which have requested notification, at least twenty-four hours prior to the special meeting.

**{¶117}** "As to this point, this court would note that, in giving notice of a general meeting, a public body is not required to state the meeting's purpose. This distinction is

obviously predicated upon the fact that such a meeting is not being held for any specific reason, but instead is being held because it is a regularly scheduled meeting. In contrast, the use of the term 'special meeting' implies that such a meeting can only be held when there are specific reasons for holding it. Given the existence of such a reason, it follows that the notice of a special meeting must refer to those specific reasons, and that those specific issues are the only ones which can be addressed at such a meeting.

{¶118} "However, notwithstanding the foregoing distinction, there is nothing in the wording of R.C. 121.22(F) which would support the conclusion that a special meeting can only be held to consider only one specific issue; i.e., the language of the division does not prohibit the holding of a special meeting for general purposes. In considering this point, the Ohio Attorney General has stated that, when taken in context of the entire statute, the term 'special meeting' was only intended to refer to those meetings which were not regularly scheduled. 1988 Ohio Atty.Gen.Ops. 88-029, at 17.

{¶119} "Accordingly, although a public body is required to provide notice of the purpose of a special meeting, this notice can merely state that the meeting is being held for general purposes, if that is the actual reason for the meeting."

{¶120} Upon our review of the notices at issue herein, we find they sufficiently complied with the Ohio Open Meetings Act as they provided notice the special meetings were being held to discuss personnel issues. We find the notices sufficiently set forth the time, place and purpose of the Special Meetings pursuant to R.C. 121.22(F).

{¶121} The April 1, 2010 Judgment Entry of the Delaware County Court of Common Pleas is affirmed.

By: Hoffman, P.J.

Delaney, J. concurs,

Edwards, J.  concurs separately

s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


_____
HON. JULIE A. EDWARDS


s/ Patricia A. Delaney_____
HON. PATRICIA A. DELANEY

EDWARDS, J., CONCURRING OPINION

{¶122} I concur with the majority as to its analysis and disposition of this case except for a portion of the analysis of the third assignment of error.

{¶123} The majority determines that comments made during the public speaks portion of a township trustee's meetings is not the functional equivalent of creating or disseminating those comments. I disagree. Comments made at the public speaks portion of a public meeting are "made public" which is one of the elements establishing that a liberty right is infringed upon as set forth in the *Buxton* case cited by the majority.

{¶124} While I disagree with the majority as to whether the above activity was the functional equivalent of creating or disseminating information, I do agree that appellee did not disseminate or make public the information. Appellee is the Board of Township Trustees and appellant's employer. Under *Buxton*, the employer must be the one who makes the statement public. I don't find that the Board's allowance of comments to be made by persons other than Board members at a public speaks portion of a public meeting is what the *Buxton* case meant by an employer making a statement public.

{¶125} I would find that a liberty right is infringed upon when a governmental employer, itself, makes its reasons public as to why an employee was terminated and those reasons or basis for termination are not based on facts and are stigmatizing to the employee, and that employee is not given the chance to respond and clear his/her name.

s/ Judge Julie A. Edwards_____

Judge Julie A. Edwards

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

LESLIE WARTHMAN                         :
                                        :
    Plaintiff-Appellant                 :
                                        :
-vs-                                    :           JUDGMENT ENTRY
                                        :
GENOA TOWNSHIP BOARD OF                 :
TRUSTEES                                :
                                        :
    Defendant-Appellee                  :           Case No. 10CAH040034

For the reasons stated in our accompanying Opinion, the April 1, 2010 Judgment

Entry of the Delaware County Court of Common Pleas is affirmed.  Costs to Appellant


s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ Julie A. Edwards_____
HON. JULIE A. EDWARDS


s/ Patricia A. Delaney _____
HON. PATRICIA A. DELANEY